

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

AUG 0 1 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

| In the Matter of the Search of: | ) | |
|---|---|---|
| One Apple iPhone 6s Plus cell phone, and one Samsung Galaxy S8 cell phone, processed into evidence on June 16, 2018, in connection with Vacaville Police Department Case No. 18-05002. | ) ) ) ) ) | Case No. 2:18-SW-615 |

## APPLICATION FOR A SEARCH WARRANT

I, Michael A. Miller, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with commerce by robbery. |
| 18 U.S.C. § 924(c)(1)(A)(ii) | Brandishing a firearm during a crime of violence. |

The application is based on these facts:

**See affidavit of FBI Task Force Officer Michael A. Miller, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael A. Miller, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ August 1, 2018 _____

_____
*Judge's signature*

City and state: _____ Sacramento, California _____

Hon. Deborah L. Barnes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH ELECTRONIC DEVICES

I, Michael A. Miller, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property (i.e., two electronic devices further described in Attachment A) which are currently in law enforcement's possession, and the extraction from that property of electronically stored information further described in Attachment B.

2.    I am a Detective with the Vacaville Police Department. I have been a sworn peace officer with the City of Vacaville for the past 16 years. I served as a peace officer with the Oakland Police Department for two years before that. In January 2017, I was cross-designated as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), Sacramento Division, Fairfield Resident Agency. In this role, I am responsible for investigating firearms-, narcotics-, and gang-related activity in Solano County as a member of the Solano County Violent Crimes Task Force.

3.    I have received thousands of hours of formal training with the Oakland and Vacaville Police Departments. This includes: 1,051 hours at the P.O.S.T. basic police academy (1999); 40-hour Interview and Interrogation course (2002); 80-hour Basic SWAT Operator course (2004); 80-hour Major Drugs / Narcotics Investigations course (2014); 16-hour Search Warrants "A through Z" course (2014); 24-hour Informant Development and Maintenance course (2015); 16-hour Child Exploitation Investigation course (2016); 8-hour California State Wiretap Certification (2016); 40-hour SWAT Team Leader School (2016); and 16-hours in attendance at the WSIN Human Trafficking Summit (2017).

4.    In addition to my classroom training, I have been involved in over 100 narcotics-related investigations, and over 100 human-trafficking investigations. I have testified as an expert over thirty times in the field of narcotics possession and sales, and seven times in the field of human trafficking, in the Solano County Superior Court. I have also testified as an expert in the area of firearms functioning and identification, as well as with respect to the Cellebrite data extraction process. In my 18-year career in law enforcement, I have participated in all aspects of criminal investigations, including physical and electronic surveillance, executing search warrants, use of GPS data and tracking devices, interviews, and arrests. In addition to my classroom training, this practical experience has formed the basis of my opinions set forth below.

5.    As a result of my training and experience with the Oakland PD, the Vacaville PD, and the FBI, I am familiar with the state and federal laws pertaining to armed robberies. I know it is unlawful under Title 18 of the United States Code to commit a robbery that has the effect of interfering with interstate commerce. I also know that it is unlawful under Title 18 of the

United States Code to use, carry, or brandish a firearm during and in relation to a crime of violence.

6.     The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel involved in this case, and my own personal knowledge.  Because this Affidavit is submitted for the limited purpose of establishing probable cause for a search, I have not included every fact known to me about this case.  Rather, I have set forth only those facts I believe are necessary to support probable cause for a search warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7.     The property to be searched consists of two cellular telephones ("the Devices"):

a.     One silver Apple iPhone 6s Plus cell phone, model # A1687, with FCC ID: BCG-E2944A, and IC ID: 579C-E2944A (Device 1); and

b.     One black Samsung Galaxy S8 cell phone, model # SM-G950U, with FCC ID: A3LSMG950U, and IMEI: 357753081334958 (Device 2).

8.     Device 1 was seized from the center console area of the Toyota Corolla that Dean Orland YOUNG, Jr. and Isaiah Elijah COLE were driving in at the time of their arrest on June 16, 2018, in Vacaville, California.

9.     Device 2 was seized from the person of Isaiah Elijah COLE at the time of his arrest on June 16, 2018, in Vacaville, California.

10.    Both devices were processed into evidence on June 16, 2018, in connection with Vacaville Police Department Case Number 18-05002, and have been in law enforcement's custody continuously since that time.

11.    The applied-for warrant would authorize the forensic examination of these Devices for the purpose of identifying electronically-stored data particularly described in Attachment B.

## RELEVANT JUDICIAL ACTIVITY IN THE EASTERN DISTRICT OF CALIFORNIA

12.    On July 13, 2018, based on the facts set forth below, I presented a criminal complaint and set of arrest warrants to United States Magistrate Judge Carolyn K. Delaney, Eastern District of California.  The complaint charged YOUNG with three counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and three counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  The complaint also charged COLE with one count of Hobbs Act robbery and one count of brandishing a firearm during a crime of violence, under the same statutes cited above.  Magistrate Judge Delaney signed the complaint and arrest warrants on that day.  *See United States v. Dean Orland Young, Jr., et al.*, 2:18-mj-0132-CKD (E.D. Cal.).

13.     On July 26, 2018, the grand jury for the Eastern District of California returned a six-count indictment against YOUNG, charging him with the same offenses alleged in the complaint. The indictment also charged COLE with one count of Hobbs Act robbery. *See United States v. Dean Orland Young, Jr., et al.*, 2:18-cr-0142-JAM (E.D. Cal.).

## PROBABLE CAUSE

14.     This case arises from a series of five armed robberies, four of which occurred in a 4-week period in May and June 2018. Defendant Dean Orlando YOUNG, Jr. brandished a firearm in all five robberies, and all five were recorded on high-quality CCTV/surveillance video. Co-defendant Isaiah Elijah COLE served as the getaway driver for the fifth robbery. The basics for the five armed robberies are as follows:

| Date | Location | County | Business |
|------|----------|--------|----------|
| 1) August 11, 2017 | Vacaville, CA | Solano | Arco AM/PM |
| 2) May 14, 2018 | Emeryville, CA | Alameda | Chevron |
| 3) May 22, 2018 | Berkeley, CA | Alameda | Chevron |
| 4) May 31, 2018 | Sacramento, CA | Sacramento | Union 76 |
| 5) June 16, 2018 | Vacaville, CA | Solano | Arco AM/PM |

15.     The criminal complaint and indictment charge YOUNG and COLE with the three armed robberies that took place in the Eastern District of California, to wit, the robberies that occurred on August 11, 2017 (Vacaville), May 31, 2018 (Sacramento), and June 16, 2018 (Vacaville). Because the evidence from all five robberies overlaps and is relevant to the search warrant sought here, a short discussion of each event is provided below.

## Armed Robbery #1 – August 11, 2017
## (Vacaville, California – Dean YOUNG)

16.     On August 11, 2017, at around 12:30 p.m., a suspect entered the Arco AM/PM convenience store at 2500 Nut Tree Road in Vacaville. The suspect was wearing a distinctive mask over his face and carrying a backpack.

17.     When the suspect entered the store, Alexander Gonzalez was working behind the front counter clerk as a clerk. Gonzalez had just started working at the AM/PM seven days before (on August 3), and he was still training as a new employee.

18.     The suspect ran behind the front counter and confronted Gonzalez. He pointed a revolver at the back of Gonzalez's head and ordered him to open the cash drawers. Gonzalez complied, and the suspect took an unknown amount of cash from the drawers, as well as several bottles of Hennessy liquor from behind the counter and some cigars. The suspect put the stolen items in his backpack and then ran out of the store.

19.     Gonzalez saw the suspect run from the store and through the parking lot, at which point he jumped over the fence into an adjacent condominium complex. Gonzalez described the

3

suspect as an African-American male, 5'11" to 6'0" tall, with a thin build. Gonzalez said the suspect was wearing a mask with the image of the Joker painted on the face, a black sweatshirt, and black sweatpants. Gonzalez did not think the suspect was wearing gloves, and he recalled being able to see the man's skin tone from the area around the eye and mouth holes in the mask.

20. Detectives with the Vacaville Police Department spoke with several witnesses. One of the witnesses described the suspect as about 6'1", with a thin build, wearing a skeleton-design mask over his face and a grey long sleeve jacket, and carrying a grey backpack. She said that the suspect ran directly in front of her car, so she had an unobstructed view of him.

21. Another witness who lived in the condominiums next to the AM/PM store said that she was inside her home with her children when she heard a loud noise in her backyard that sounded like someone jumping over the fence. The woman said that she looked outside and saw the suspect running through her backyard. The woman described the suspect as wearing a skeleton-design mask and a black hooded long-sleeve shirt with a yellow stripe across the front. The woman said that the suspect was carrying what looked like a duffel bag.

22. The Vacaville Police Department (VPD) began investigating the robbery under VPD Case Number 2017-06266. The lead detective (Detective Andrew Polik) reviewed surveillance footage from the store and noted that the suspect had a distinctive tattoo on his right forearm. Detective Polik also noted that the gun appeared to be "a blued steel S&W .38 or .357 revolver with a 6" barrel and was similar to a Model 66 but in blued steel." Photos from the AM/PM's surveillance cameras are below:

 

23. Detective Polik distributed a flyer to other law enforcement agencies with details about the robbery. Vacaville PD continued to investigate the case, but it remained unsolved until recently.

/ / /

### Armed Robbery #2 – May 14, 2018
### (Emeryville, California – Dean YOUNG)

24.   On May 14, 2018, at around 6:25 p.m., a suspect entered the Chevron gas station at 1400 Powell Street in Emeryville.  The suspect was wearing a mask, a black hooded sweatshirt, and black gloves.

25.   At the time, employee Sonia Catndel was working behind the front counter.  Catndel said that the suspect jumped over the counter and pointed a black gun directly at her head.  The suspect demanded all the money from the register.  Catndel said that the suspect told her, "Hurry up, open the cash register or I'll kill you."  Catndel opened the drawer and gave him all the cash inside.

26.   The suspect then went to the second register and demanded all of the money out of that one as well.  Catndel pleaded with the suspect and said that the register was password protected and that she did not have the password.  At that point, the suspect took the register and slammed it on the ground, taking all of the money inside.  Catndel said the suspect fled through the parking lot towards Peladeau Street.  She said that the total loss was approximately $300, in different denominations ranging from $5 to $100.

27.   The Emeryville Police Department (EPD) began investigating the case under EPD Case Number 1805-1082.  The lead detective (Det. Brian Head) reviewed footage from the Chevron and noted that a male subject jumped over the counter and pointed a silver revolver at Catndel.  In the video, the suspect is pointing the gun at the cash register and at Catndel.  Catndel opens the register and the suspect takes money, at which point he moves to the second register.  Detective Head described the man on video as being approximately 5'9", 160 pounds, wearing a mask, dark-colored sweater, blue jeans, with black shoes with red laces.



28.   Several witnesses said that the suspect fled the Chevron's convenience store, ran towards Peladeau Street, and then jumped into a black Chevrolet and drove off.  Surveillance cameras on the street captured the suspect and the suspect getting into the car below.



29.   One of the witnesses said that the suspect ran right past him.  This witness described the suspect as a younger looking black male adult wearing dark clothing and having short "dreads."  The witness said that the suspect was about 5'9" with a thin build.  The witness said the suspect got into a black Chevrolet parked on Peladeau Street.  The witness could not recall whether the suspect got into the driver's seat or passenger's seat.  The witness took a picture of the Chevrolet with his cell phone as the car was driving away.

30.   From the photo, law enforcement was later able to identify the Chevrolet's license plate as "8CEN536."  The registration shows that the car is a black 2016 Chevrolet Cruze, registered to Leona or Dean Young at 2053 Davis Drive, Fairfield, CA 94533.

31.   Detective Head ran a query for "Dean Young" in a law enforcement database.  This returned a hit for "Dean Orlando Young," with the most recent entry being an arrest in Fairfield, California, for domestic violence.  Detective Head then ran a CalPhoto query, which showed that YOUNG's California DMV report lists him as an African-American male, 6'0" tall, 175 pounds, with black hair and brown eyes.  Detective Head noted that YOUNG's DMV photo bears a strong resemblance to the suspect in the video.



6

32.   In anticipation of preparing a search warrant for YOUNG's home, Detective Head gathered
      additional information about YOUNG. He learned that YOUNG's last known address
      (2053 Davis Drive, Fairfield, CA 94533), is also the same address for his parents, Leona and
      Dean Young, Sr. Detective Head also noted that YOUNG and Leona do not have any
      firearms registered to them. Notably, however, Dean Young, Sr. has several guns
      registered in his name, including a Smith and Wesson .357 revolver (s/n: 4K31949). The
      gun is described as a 5" blue steel.

33.   Detective Head obtained a Ramey warrant from the Solano County Superior Court for
      YOUNG's arrest.

### Armed Robbery #3 – May 22, 2018
### (Berkeley, California – Dean YOUNG)

34.   On May 22, 2018, at around 6:10 p.m., a suspect entered the Chevron gas station at 1300
      San Pablo Avenue in Berkeley. The suspect was wearing a mask and armed with a
      revolver. The suspect jumped over the front counter, confronted the clerk, and demanded
      money. The suspect told the clerk, "Motherfucker, open the register or I'll kill you!" The
      suspect also pistol-whipped the clerk in the right side of the head. The suspect stole an
      estimated $300-500 in cash and several cigars. The victim described the suspect as a male,
      5'9" to 5'10", thin build, wearing a mask with black and white colors, a dark jacket, blue
      acid-washed jeans, and black shoes with red laces. The suspect fled on foot and jumped
      over a fence into a parking lot.

35.   Photos from the Chevron's security cameras show the Berkeley robbery and assault in
      progress:



36.   The Berkeley Police Department (BPD) began investigating the case under BPD Case
      Number 18-29189. The lead detective in the Berkeley case (Det. Frank Landrum) got in
      touch with Detective Head, and the two men noted the similarities between the Berkeley

and Emeryville robberies, including the mask that the suspect was wearing, the black shoes with red laces, and the revolver that the suspect brandished each time.

37.     Based on their discussions, and the likelihood that YOUNG was involved in the May 22, 2018 robbery, Detective Landrum obtained a Ramey warrant from the Alameda County Superior Court for YOUNG's arrest.

### Armed Robbery #4 – May 31, 2018
### (Sacramento, California – Dean YOUNG)

38.     On May 31, 2018, at around 4:13 p.m., a suspect walked into the Union 76 gas station at 2400 15th Street in Sacramento.  As the suspect came into the garage area, he pulled a mask over his face and asked the gas station's owner, David Wong, "Where's the money at?"  Wong said, "we [don't] have any money."

39.     On hearing that, the suspect pulled out a gun and pointed it at Wong.  Wong believes that the gun was a revolver.  Wong pushed the suspect and then ran out of the garage through the back door.  Wong says that he saw the suspect walk into the office area.  Wong says that the suspect came out of the office a few seconds later and ran off.  The suspect took approximately $5,000 that was in a grey Bank of America deposit bag.  The suspect fled towards a Starbucks parking lot and was seen driving away in a black newer model four-door Chevrolet.  Witnesses describe the suspect as wearing a sweatshirt or a long sleeve shirt and blue jeans.

40.     The Sacramento Police Department (SPD) began investigating the case under SPD Case Number 18-164830.  Detectives reviewed surveillance footage from the Union 76's security cameras.  The video shows that at 4:11 p.m., an African-American male wearing blue jeans, a dark hoodie, and dark shoes, parks a black Chevrolet in the Starbucks parking lot across the street from the Union 76 gas station.  Several minutes later, the video then shows the subject walking toward the gas station and then leaving abruptly.

41.     Below are several relevant photos from the Union 76's surveillance cameras:

  



**Armed Robbery #5 – June 16, 2018**
**(Vacaville, California – Dean YOUNG and Isaiah COLE)**

42.   On June 16, 2018, at around 6:06 p.m., Vacaville PD dispatch began receiving emergency calls about a robbery in progress at the Arco AM/PM convenience store at 2500 Nut Tree Road in Vacaville.  (Note: this is the same convenience store targeted on August 11, 2017).  Vacaville PD immediately responded to the scene and gathered the following information:

43.   Just after 6:00 p.m., a suspect entered the convenience store wearing a mask on his face and with a revolver in hand.



44.   The suspect ran past a female customer and back towards the counter area.  The suspect slammed two cash registers onto the ground.  While this was happening, the clerk stood in front of the counter with his hands raised.  The clerk described the suspect as having darker skin, male, in his mid-20s with a very thin build.  He estimated that the suspect was 5'11", 150-160 pounds, and wearing a blue ski mask, blue jack, and jeans.  The clerk recalled that the suspect may have had a wrist tattoo, but he could not remember which wrist or what the design looked like.

45.   The Vacaville Police Department (VPD) investigated this robbery under VPD Case Number 2018-05002.  Surveillance footage shows that the suspect was wearing a dark long-sleeved sweatshirt, red Polo Ralph Lauren boxer briefs with a black/white waistband,

blue jeans, a brown belt, and black and white shoes.  The video also shows the suspect grab a bottle of Hennessy liquor from behind the counter area, which he carries out of the store as he is fleeing:



46.     In addition, the surveillance video shows the suspect setting the revolver down as he is accessing one of the cash registers.  The suspect appears to have a tattoo on his right forearm:



10

47.    Two of the witnesses described a red Toyota Camry or Corolla with a partial plate of "6J" as a possible suspect vehicle. The car was seen waiting a block away and witnesses saw the suspect get into the car after jumping several fences. The car left the area at a high rate of speed.

48.    Shortly afterwards, law enforcement located a car that matched the description of the suspect vehicle. Vacaville PD officers stopped the car and detained the two men inside. Isaiah Elijah COLE was driving and Dean Orlando YOUNG, Jr. was in the front passenger's seat. YOUNG was immediately identified as the primary suspect in the robbery based on the clothes he was wearing (i.e., the clothes he was wearing at the time of the vehicle stop were the exact same clothing that the suspect had been wearing at the time of the robbery). In the car, officers found a .357 revolver and blue beanie (with holes punched in the fabric), and a black sweatshirt and bottle of Hennessy liquor on the front passenger floorboard. Photos of some of the items recovered from the red Toyota Corolla are below:

 

 

49.   Officers also found $815 cash in the front passenger's door pocket. The Arco AM/PM
      manager said that just over $900 was taken during the robbery. During a search of the area
      where the then-suspect had fled, officers found a $100 bill near some bushes just over a
      fence that the suspect had jumped.

50.   In the backseat of the car, officers found a duffel bag with an unmarked and unserialized
      short-barreled assault rifle.

51.   A black Apple iPhone 6s Plus cell phone was recovered from the Toyota Corolla's center
      console area. Officers seized a Samsung Galaxy S8 cell phone from COLE's person.

52.   Officers arrested YOUNG and COLE based on their suspected roles in the convenience
      store robbery. With respect to COLE, the officers noted that the Corolla was parked and
      waiting for YOUNG at an unusual location in a residential area *behind* the AM/PM. This
      location would have required YOUNG to scale a fence/wall to get to the car.



53.   In addition, officers noted the high-rate of speed that witnesses described seeing the car
      drive away after YOUNG got in. One witness said that the car did not appear to slow down
      for traffic before making a turn through an intersection.

/ / /

54.     YOUNG and COLE were taken to the Solano County Jail and booked.  Both men were
        photographed at the jail.  The photo below shows YOUNG's forearms:



55.     YOUNG was Mirandized and spoke with Detective Polik.  YOUNG said that the revolver
        found in the car was his father's and that his father kept the gun at the family home.
        YOUNG acknowledged that he made a "mask for what happened."  Detective Polik asked
        YOUNG if his fingerprints would be on the bottle of Hennessy and YOUNG said that they
        would.  YOUNG also said that his fingerprints would be on the pistol in the bag.

56.     YOUNG said that he knew COLE from high school and that they were supposed to go to
        an event together that evening.  YOUNG said that the event was supposed to be in Oakland
        or Sacramento, it just depended on "wherever it was going to happen."  YOUNG said that
        he and COLE were in Vacaville because they were going to stop by the Wal-Mart near the
        Outlets.

57.     During the interview, YOUNG started crying.  He said that COLE did not know what was
        going on.  He had told COLE to drive.  YOUNG said that he told COLE where to drop him
        off and then showed COLE where to pick him up.  YOUNG said he didn't think COLE
        saw him with the gun or the bottle but was surprised when he [YOUNG] had the bottle
        after he got into the car.  YOUNG says that COLE asked him where the bottle came from
        and he told COLE to just drive away.  YOUNG said that COLE was not responsible for
        what happened in the store.

58.     For his part, COLE also gave a post-*Miranda* statement.  COLE said that he was driving
        YOUNG's car.  COLE denied knowing about the robbery, but he said that YOUNG did not

13

tell him where to park, but instead told COLE to "wait for him around the corner." COLE said that he could not recall where he dropped YOUNG off, and that he was trying to figure out whether this was all over a bottle of liquor.

59. Based on my training and experience, and my review of the materials in this investigation, I believe that COLE was an accomplice to the June 16, 2018 armed robbery, notwithstanding his denials. The location where COLE parked the Toyota Corolla and waited for YOUNG, the high rate of speed at which COLE drove the Corolla away from the area, and the fact that the car did not slow down for traffic as it turned through an intersection, all suggests that COLE had intentionally positioned the car to execute a planned escape. In addition, I am familiar with this residential neighborhood and know that the fastest escape route is to the north and west, however, COLE drove to the south and then took a circuitous route through the neighborhood, eventually returning to the north and west, suggesting that he was either lost or attempting to evade law enforcement. Last, I note that when officers detained YOUNG and COLE, they saw what appeared to be the handle of a revolver-style firearm under the front passenger's seat. Even if YOUNG had the revolver concealed when he got into the car, he would have likely had to reveal the gun at some point when transferring it to underneath the passenger's seat.

60. As I note above, on July 13, 2018, Magistrate Judge Delaney, signed a criminal complaint and arrest warrants for YOUNG and COLE. *See* 2:18-mj-132-CKD (E.D. Cal.). I took YOUNG into federal custody the next day and transported him to Sacramento, where I turned him over to the United States Marshals Service pending federal prosecution.

61. COLE surrendered himself to me at the Vacaville Police Department on July 23, 2018. I transported him to the United States Marshals Service in Sacramento later that day.

62. Based on my training and experience, and from what I have learned by consulting other agents, I know that mobile telephones:

- preserve in their memory a history of incoming, outgoing, and missed calls;
- contain in their memory a telephone book, which allows the user to store numbers and other contact information;
- contain in their memory text messages sent, received, and drafted by the user;
- have a voicemail function that allows callers to leave messages when the user does not answer;
- contain other user-entered files such as "to-do" lists, which can provide evidence of a crime;
- contain photographic data files, which can be evidence of criminal activity when the user took pictures of evidence of crime.

63. Mobile telephone companies also store the data described in the above-paragraph on their own servers and associate the data with particular users' mobile telephones. In addition, all of these functions are can be found on a "smart" phone or similar handheld device, as well as evidence of email communications.

64.  Because there is probable cause to believe that YOUNG and COLE aided-and-abetted one another in committing the Hobbs Act robbery in Vacaville on June 16, 2018, and that YOUNG committed the four separate convenience store robberies before then, during which YOUNG brandished a firearm on each occasion, I submit there is also probable cause to believe that information and records relating to these activities will be found stored in the two Devices seized and processed into evidence on June 16, 2018, and in particular, will contain evidence of the types described in Attachment B.

65.  Based on my training and experience as an FBI Task Force Officer, I know that suspects who commit violent crimes, including armed robberies, frequently use cell phones to facilitate their activities.  Specifically, cell phones—and the smart phone functions within them, which are capable of accessing the internet—are frequently used to search potential locations for future crimes, to map entry and escape routes, and to communicate with other co-conspirators and accomplices.  Address books and contact lists often include the names, monikers, and contact information for individuals involved in criminal activity.  Cell phones are equipped with digital cameras, and therefore often contain photographs and videos taken by individuals involved in criminal activities, including "trophy" photographs of contraband, to include cash, firearms, and other photographs of associates and business partners.  Last, I know that some cell phones store the geolocation/GPS coordinates for the phone in the internal memory, which shows where the phone has been at any given date and time.

66.  Given my training and experience, I believe that information and evidence relating to the June 16, 2018 armed robbery will be located on YOUNG's and COLE's respective cell phones (the Devices), and that information relating to the other four robberies will be found on YOUNG's phone.

67.  Devices 1 and 2 have been in law enforcement's possession continuously since they were processed into evidence on June 16, 2018.  Based on my training and experience, I know the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same condition as they were when they were seized.

## TECHNICAL TERMS

68.  Based on my training and experience, I use the following technical terms to convey the following meanings:

- Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone

numbers in electronic "address books;" sending, receiving, and storing text
messages and e-mail; taking, sending, receiving, and storing still photographs and
moving video; storing and playing back audio files; storing dates, appointments,
and other information on personal calendars; and accessing and downloading
information from the Internet. Wireless telephones may also include global
positioning system ("GPS") technology for determining the location of the device.

- Digital camera: A digital camera is a camera that records pictures as digital picture
  files, rather than by using photographic film. Digital cameras use a variety of fixed
  and removable storage media to store their recorded images. Images can usually be
  retrieved by connecting the camera to a computer or by connecting the removable
  storage medium to a separate reader. Removable storage media include various
  types of flash memory cards or miniature hard drives. Most digital cameras also
  include a screen for viewing the stored images. This storage media can contain any
  digital data, including data unrelated to photographs or videos.

69. Based on my training, experience, and research, I know that the Devices have capabilities
that allow them to serve as a wireless telephone, digital camera, portable media player,
internet access device, and PDA. In my training and experience, examining data stored on
devices of this type can uncover, among other things, evidence that reveals or suggests who
possessed or used the device, who they communicated with, and the content of those
communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

70. Based on my knowledge, training, and experience, I know that electronic devices can store
information for long periods of time. Similarly, things that have been viewed via the
Internet are typically stored for some period of time on the device. This information can
sometimes be recovered with forensics tools.

71. *Forensic evidence.* As further described in Attachment B, this application seeks permission
to locate not only electronically stored information that might serve as direct evidence of
the crimes described on the warrant, but also forensic evidence that establishes how the
Devices were used, the purpose of their use, who used them, and when. There is probable
cause to believe that this forensic electronic evidence might be on the Devices because:

- Data on the storage medium can provide evidence of a file that was once on the
  storage medium but has since been deleted or edited, or of a deleted portion of a file
  (such as a paragraph that has been deleted from a word processing file).

- Forensic evidence on a device can also indicate who has used or controlled the
  device. This "user attribution" evidence is analogous to the search for "indicia of
  occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how an electronic device works may,
  after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The process of identifying electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

72. *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

73. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

74. Based on the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the forensic examination of the two Devices described in Attachment A, to seek the items described in Attachment B.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Michael A. Miller
Task Force Officer
Federal Bureau of Investigation

Sworn to and subscribed before me on August 1, 2018.

Hon. Deborah L. Barnes
United States Magistrate Judge

17

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

## **ATTACHMENT A**

The property to be searched is as follows:

A.  One silver Apple iPhone 6s Plus cell phone, model # A1687, with FCC ID: BCG-
E2944A, and IC ID: 579C-E2944A (Device 1); and

B.  One black Samsung Galaxy S8 cell phone, model # SM-G950U, with FCC ID:
A3LSMG950U, and IMEI: 357753081334958 (Device 2).

Device 1 was seized from the center console area of the Toyota Corolla that Dean Orland
YOUNG, Jr. and Isaiah Elijah COLE were driving in at the time of their arrest on June 16, 2018, in
Vacaville, California.

Device 2 was seized from the person of Isaiah Elijah COLE at the time of his arrest on June
16, 2018, in Vacaville, California.

Both devices were processed into evidence on June 16, 2018, in connection with Vacaville
Police Department Case No. 18-05002, and have been in law enforcement custody continuously
since that time.

This warrant authorizes the forensic examination of the two devices described above for
purposes of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. §§ 1951(a) and 924(c)(1)(A)(ii), and involve Dean Orland YOUNG, Jr. and Isaiah Elijah COLE, including:

      a.      All names, words, telephone numbers, email addresses, time/date information, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

            i.      Call history (incoming, outgoing, and missed calls);
            ii.      Text messaging history (incoming, outgoing, and drafts);
            iii.      Telephone book (a/k/a "contacts list");
            iv.      Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
            v.      Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
            vi.      Voicemail;
            vii.      Photo gallery;
            viii.      User-entered messages (i.e., to-do lists); and
            ix.      Any passwords used to access the electronic data described above.

      b.      Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices for the following dates: August 11, 2017; May 14, 2018; May 22, 2018; May 31, 2018, and June 16, 2018.

      c.      Any information related to bank records, checks, credit card bills, account information, or other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of:<br><br>One Apple iPhone 6s Plus cell phone, and one Samsung<br>Galaxy S8 cell phone, processed into evidence on June 16,<br>2018, in connection with Vacaville Police Department<br>Case No. 18-05002. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

2:16 - SW - 615

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ EASTERN _____ District of _____ CALIFORNIA _____
*(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ August 15, 2018 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐  for _____ days *(not to exceed 30)* ☐  until, the facts justifying, the later specific date of _____ .

Date and time issued:      8-1-18 @ 10:40am

City and state:      Sacramento, California

*Judge's signature*

Hon. Deborah L. Barnes, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                          Date